Kathleen E. Trever (ISB No. 4862)
Deputy Attorney General
600 S. Walnut Street
P.O. Box 25
Boise, ID 83707
(208) 334-3771
(208) 334-4885 (fax)
kathleen.trever@idfg.idaho.gov
    Counsel for Defendant Moore and
    Individual Idaho Fish and Game Commissioners

Samuel Eaton (ISB No. 8974)
Idaho Office of Species Conservation
304 N. 8th St., Ste. 149
Boise, ID 83702
(208) 334-2189
(208) 334-2172 (Fax)
sam.eaton@osc.idaho.gov
    Counsel for Defendant Otter

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, WESTERN WATERSHEDS PROJECT, FRIENDS OF THE CLEARWATER, WILDEARTH GUARDIANS;<br>    Plaintiffs,<br><br>v.<br><br>IDAHO GOVERNOR C.L. "BUTCH" OTTER, in his official capacity; VIRGIL MOORE, Director of the Idaho Department of Fish and Game, in his official capacity; BRAD CORKILL, DANIEL BLANCO, BLAKE FISCHER, GREGORY CAMERON, LANE CLEZIE, DERICK ATTEBURY, and JERRY MEYERS, members of the Idaho Fish and Game Commission, in their official capacity;<br>    Defendants.<br><br>and IDAHO TRAPPERS ASSOCIATION, NATIONAL TRAPPERS ASSOCIATION, BRUCE BARTOW, and JIMMY KRAMER,<br>    Defendant Intervenors. | Case No. 1:14-CV-00258-BLW<br><br>STATE DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER MEMORANDUM DECISION AND ORDER (DKT. 103) |

The above-named State Defendants (State Officials) ask the Court to reconsider its interlocutory Memorandum Decision and Order of January 8, 2016 (Dkt. 103) (Order), and to deny fully Plaintiffs' motion for summary judgment (Dkt. 55), and to modify the Court's grant of State Officials' motion for summary judgment (Dkt. 83), such that Plaintiffs are blocked from their requested relief regarding all seven Regions of Idaho.[1] State Officials support their refiled motion to reconsider by: (1) new evidence,[2] including a declaration addressing the Court's uncertainty regarding the official nature of testimony by Bridget Fahey of the U.S. Fish and Wildlife Service (FWS), and (2) identifying errors of law and fact.

## I. STANDARD OF REVIEW: MOTION TO RECONSIDER

State Officials move for reconsideration under either: (i) FRCP 54(b), which allows revision of "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"; or (ii) the Court's inherent authority to revise an interlocutory order over which it has jurisdiction. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper,* 254 F.3d 882, 886-7 (9th Cir.2001) ("Nothing in the Rules limits the power of the court to correct mistakes made in its handling of a case so long as the court's jurisdiction continues, *i.e.*, until the entry of judgment")(citation omitted).[3]

The District of Idaho has no local rules governing motions to reconsider interlocutory orders. *Cf. Motorola, Inc. v. J.B. Rodgers Mechanical Contractors,* 215 F.R.D. 581, 583-6 (D.

---

[1] Consistent with the Court's Orders (Dkt. 116 and Dkt. 119), State Officials file this brief in support of their refiled motion to reconsider.
[2] State Officials previously filed the Second Declaration of Bridget Fahey (Dkt. 105-2) in support of their February 8, 2016 Motion for Reconsideration (Dkt. 105), and it is "new evidence" under the appropriate standard for review.
[3] State Officials alternatively moved to amend a judgment as to the granting of injunctive relief under FRCP 59(e) to fully preserve their rights. Dkt. 105.

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 2

Ariz. 2003) (summarizing other districts' local rules governing interlocutory order reconsideration). In evaluating motions to reconsider interlocutory orders in other cases, this Court has applied standards governing FRCP 59(e). *E.g., Hollist v. Madison Cnty.,* 2015 WL 733985, *4 (D. Idaho 2015). A motion to amend a judgment under FRCP 59(e) is appropriate "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Id.* (citation omitted). In supporting their motion, State Officials present new evidence and identify clear errors in the *Order*.[4]

## II. THE CITES ITS PROVIDES A §9 EXEMPTION FOR INCIDENTAL LYNX TAKE IN IDAHO BY LICENSED BOBCAT TRAPPERS.

### A. A new Declaration confirms prior testimony is an FWS official statement that a CITES ITS exempts incidental lynx take by Idaho-licensed bobcat trappers.

Plaintiffs sued no federal party, and their Complaint did not challenge the propriety of any federal agency action. Instead, Plaintiffs sued State Officials, alleging they "have violated, and remain in violation, of the ESA by authorizing trapping that has a reasonable probability to take lynx in the absence of an Incidental Take Permit ("ITP") or other authorization from [FWS] that would authorize such takes." *Complaint* ¶1 (Dkt. 1). State Officials contend a CITES Incidental Take Statement (ITS) (*see Order* at 11-12) provides FWS authorization for incidental lynx take by Idaho-licensed bobcat trappers.

To maintain an *Ex Parte Young* suit under the ESA against State Officials, who are otherwise immune from suit, Plaintiffs must show a sufficient likelihood of **ongoing** or **future** ESA violations that entitle them to **prospective** injunctive or declaratory relief. *See Nat'l Audubon Soc'y, Inc. v. Davis,* 307 F.3d 835, 847-48 (9th Cir.), *amended* 312 F.3d 416 (2002).

---

[4]State Officials also reserve their appellate rights as to issues such as immunity, the Tenth Amendment, and standing.

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 3

Where potential future take would be within the authorization of an incidental take statement, such take would not violate the ESA, and thus presents no likelihood of future ESA violation. 16 U.S.C. § 1536(o)(2).

The Court stated it could not determine that Bridget Fahey, FWS Division Chief for Conservation and Classification, was speaking on behalf of FWS. *Order* at 14. Ms. Fahey's Second Declaration, re-submitted herewith, confirms that her statements on the CITES ITS exemption were official statements of FWS, and that FWS considers the CITES ITS to provide a §9 exemption for lynx incidentally taken during state-licensed trapping targeting bobcats in Idaho. *Second Fahey Decl.* ¶¶3-7. Ms. Fahey reconfirms that the CITES ITS numeric limits for up to 2 lynx killed and 2 lynx injured each year are FWS-authorized limits for impacts to the listed lynx distinct population segment. *Id.* ¶¶9-10. FWS also determined this level of take is unlikely to jeopardize the continued existence of the listed lynx population segment. *Id.*[5]

The Court found "the facts fit Fahey's conclusion that the CITES ITS exempts lynx incidentally taken in Idaho during licensed trapping targeting bobcats." *Order* at 13. Based on FWS' official position regarding the CITES ITS exemption and the undisputed facts, the Court's finding that Plaintiffs established four takings of lynx in violation of §9 of the ESA is incorrect. *See Order* at 10. Three of the four lynx takes reported by Idaho-licensed trappers were incidental to bobcat trapping[6]; one capture was by a trapper targeting wolf. *Order* at 6-7; *see also Ps' Statement of Material Facts* (Dkt. 55-2) ¶¶18-22.

---

[5] FWS authorized Ms. Fahey to provide testimony on FWS' behalf in regards to the CITES ITS pursuant to U.S. Department of Interior *Touhy* regulations. 43 CFR 2.280 *et seq.* These regulations identify requirements for response to subpoenas or requests to Department employees to testify regarding matters in their official capacity in actions where the United States is not a party. *See Second Fahey Decl.* ¶¶4-5.

[6] The state took enforcement action regarding the shooting of a captured lynx by a trapper mistaking it for a bobcat. *Order* at 6. And although the Court referenced the potential for

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 4

The CITES ITS remains in effect.[7] The CITES ITS continues to exempt compliant incidental lynx take by Idaho-licensed bobcat trappers, should such take occur, subject to ongoing monitoring and consultation requirements. *See Second Fahey Decl.* ¶¶7-10.

### B. The Court should not base non-federal party ESA liability on indirect conclusions of impropriety in federal agency action.

In addition to questioning the official nature of Ms. Fahey's statements, the Court rejected State Officials' reliance on the CITES ITS because "the Court cannot accept Fahey's reading of the CITES ITS." *Order* at 15. The Court stated a concern that, although the CITES ITS contains a nation-wide annual limit of 2 deaths and 2 injuries, there is no limit of takes where the lynx is released unharmed. *Order* at 14-15. "It remains practicable to set some limit—even a very low limit—on the incidental take of lynx in Idaho captured and released unharmed by trappers licensed to trap bobcats." *Id.* at 15.

A finding of "irreparable harm" based on FWS' failure to set incidental take limits in the CITES ITS is not supported where: (1) FWS has set clear annual incidental take limits specifying impact to the species based on the number of individuals "harmed" by injury or death; (2) individual lynx not subject to the take limit are specifically "unharmed"; and (3) FWS has determined that the harmful take allowed by the ITS does not jeopardize the distinct lynx population segment. S*ee Order* at 12-13; *see also* Dkt. 79 at 18 (annual incidental take limit of two deaths and two injuries). Moreover, although a determination of the reasonableness of FWS'

---

unreported lynx take (*e.g., Order* at 7), there is no evidence such take has occurred in Idaho. Moreover, such take would not be in compliance with State requirements (*Order* at 6), and would be outside the scope of this lawsuit against state officials based on alleged state action.
[7] It is come to the attention of State Officials that the lynx capture by a bobcat trapper in January 2012 in the Salmon Region occurred between expiration of the 2001 CITES Biological Opinion and ITS and their reissuance for an indefinite term beginning on April 11, 2012. *See* Dkt. 86-13. The lynx captures in December 2012 and January 2014 by bobcat trappers in the Panhandle Region occurred after reissuance of the CITES BiOp and ITS. *See id.*

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 5

setting of incidental take limits may be the subject of an action against federal entities in a suit under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* such an action is not before the Court. State Officials do not define the limits in the CITES ITS, and Plaintiffs' Complaint did not challenge the propriety of federal authorization for incidental lynx take or any other federal agency action.

Allowing suit against State Officials' conduct based on perceived flaws in a *federal* action, in the absence of claims against any federal party, violates the requirements of Article III standing, in that the federal conduct involved is not "fairly traceable" to State Officials, and any improprieties in the federal agency action would not likely be redressed by granting injunctive relief as to State Officials' conduct. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-1 (injury must not be the result of "the independent action of some third party not before the court") (citations omitted); *id.* at 568-71 (discussing redressability prong of standing inquiry).

As discussed *supra*, State Officials have shown that the CITES ITS exempts compliant take of lynx incidental to licensed bobcat trapping. The three lynx captures by bobcat trappers in this case were clearly contemplated by the CITES ITS, and fall within the bounds of the actions approved under the CITES ITS in regards to state licensing of such trapping. *See Ramsey v. Kantor,* 96 F.3d 434, 442 (9th Cir. 1996). The Court's inquiry regarding alleged ESA violations by State Officials in regards to lynx take incidental to licensed bobcat trapping in Idaho should end, based on FWS' authorization for such take in the CITES ITS.

### III. THE COURT ERRED IN ITS DETERMINATION OF IRREPARABLE HARM.

    A.    **Appellate case law evaluates "irreparable harm" under §9 based on the likelihood of harm to individual animals in the context of the species as a whole.**

Not every environmental injury warrants injunctive relief; "a plaintiff must still demonstrate that an irreparable injury is likely in the absence of an injunction." *Order* at 9, *citing*

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). The Court erred by relying solely upon the likelihood of incidental take without inquiring into the likelihood such take would result in harm to individual lynx. *See Order* at 18-21 (variously describing the Court's analytical framework in terms of "if future incidental takes are likely" and "the likelihood of incidental take" and Plaintiffs' burden of "showing that future incidental takes are likely"). The Court further erred by not evaluating the likelihood of "irreparable harm" in the context of harm significant to the listed species as a whole. *See Order* at 17.

The Court stated that State Officials "cite no §9 case at the Circuit level holding that plaintiffs have the burden of showing that the likely loss of individual species would be significant for the species as a whole." *Order* at 17. However, State Officials cited *Animal Welfare Institute (AWI) v. Martin*, 623 F.3d 19 (1st Cir. 2010). *See* Dkt. 86 at 19-20.

In *AWI*, one in a series of decisions related to trapping of lynx in Maine, the First Circuit rejected the plaintiffs' argument that they needed to show neither species-level effect nor any actual harm to individual animals to obtain injunctive relief. *AWI,* 623 F.3d at 28-9. The First Circuit concluded that argument "mistakes the question of what violates the statute with the question of the appropriate remedy for a violation." *Id*. at 28. The First Circuit upheld the district court's denial of injunctive relief, and rejected both the concept that a §9 take is *per se* irreparable harm, and the concept that harm to an individual animal is *per se* irreparable harm:

> The plaintiffs maintain that harm to a single animal constitutes irreparable harm while defendants argue that only a threat to the entire species constitutes irreparable harm. Rejecting both approaches, the[district] court "accept[ed] the principle that the death of a single animal" may call for an injunction in some circumstances, while in others "the death of one member is an isolated event that would not call for judicial action," because it has only a "negligible impact on the species as a whole."

*AWI v. Martin,* 623 F.3d at 29 (citations and footnote omitted); *see also* Dkt. 98 at 9-10 (*citing Defenders of Wildlife v. Salazar,* 812 F.Supp.2d. 1205, 1209 (D. Mont. 2009).

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 7

The Court also overlooked a central point in its citation to *Nat'l Wildlife Fed'n v. Burlington Northern Railroad,* 23 F.3d 1508, 1511-1512 (9th Cir. 1994). *See Order* at 17. In *NWF,* the Ninth Circuit rejected plaintiffs' contention that once a taking is found a court must issue an injunction. *Nat'l Wildlife Fed'n,* 23 F.3d at 1512. The Ninth Circuit recognizes that takings do not constitute irreparable harm *per se*. *Id.*, citing *TVA v. Hill*, 437 U.S.153, 173 (1978). The Ninth Circuit detailed the connection between the likelihood of future harm to injunctive relief:

> In the instant case, we find no clear evidence that the BN operations will result in the deaths of members of a protected species, as in *TVA*. [FN8] While we do not require that future harm be shown with certainty before an injunction may issue, we do require that a future injury be sufficiently *likely*. FN8: We are not saying that a threat of extinction to the species is required before an injunction may issue under the ESA….However, what *we require is a definitive threat of future harm to protected species*, not mere speculation.

*Id.* at 1512 (emphasis added).[8]

In rejecting claims of harm related to §9 take via habitat modification, the Ninth Circuit clearly viewed "a definitive threat of future harm" in the context of the species as a whole:

> Thus, in order to reach a similar finding of harm using our *Palila II,* analysis, the NWF would have to show *significant impairment* of the species' breeding or feeding habits and prove that the habitat degradation prevents, or possibly retards, <u>recovery of the species</u>.

*Id.* at 1512-3 (underlining added, italics in original).

Although Plaintiffs fail to show a likelihood of future harm to even individual lynx, it is also their burden to show the likelihood of irreparable harm in the context of the listed species as whole. The *Order* identified no evidence whereby Plaintiffs met their summary judgment burden

---

[8]State Officials recognize the Ninth Circuit does not require a threat of extinction to warrant injunctive relief in §9 cases. Dkt. 98 at 9.

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 8

regarding the likelihood of future harm to the lynx DPS from state-licensed trapping in the Panhandle and Clearwater Regions.[9]

> **B.    The Court erred in in failing to apply summary judgment standards in light of the Parties' respective burdens.**

On cross-motions for summary judgment, the Court must apply FRCP 56 standards in light of Plaintiffs' burden to demonstrate the likelihoods of future violation and irreparable harm, and must grant Defendants' motion for summary judgment when Plaintiffs fail to meet those burdens. *See Celotrex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (citation omitted).

Where parties file cross-motions for summary judgment, courts must consider each party's evidence, regardless under which motion the evidence is offered. *Las Vegas Sands, LLC. v. Nehme,* 632 F.3d 526, 532 (9th Cir. 2011) (citation omitted). In reviewing summary judgment motions, courts must determine whether the moving party is entitled to judgment as a matter of law by "viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in its favor…." *Id.* (citation omitted). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotrex,* 477 U.S. at 324 (citation omitted).

Plaintiffs have not met their burden to produce evidence that demonstrates the likelihood of irreparable harm in the context of the listed lynx population, as discussed *supra.* Assuming *arguendo*, the issues of sightings and critical habitat in these Regions are relevant, State Officials identify errors in the Court's analysis, both as to the legal standards of summary judgment as

---

[9] Based on the CITES ITS authorization discussed *supra*, this analysis is also properly limited to the likelihood of irreparable harm from trapping that targets species other than bobcat.

they apply to Plaintiffs' burden, and as to factual matters regarding the Panhandle and Clearwater Regions.

1. **The record did not support a finding of irreparable harm related to the Clearwater Region.**

The Court properly found the record "presents no evidence of a persistent lynx population in [the Clearwater] Region." *Order* at 21. However, the Court erred by finding "the 23 sightings [in the Clearwater Region] cannot be ignored," by finding the adjacency of the Clearwater Region to the Panhandle Region "certainly supports an inference that the lynx populations in the Panhandle Region cross over to the Clearwater Region," and by finding such transitory lynx "are exposed to incidental trapping in the Clearwater Region." *Order* at 21.

Only 4 of the 23 lynx "sightings" that Plaintiffs attributed to the Clearwater Region were verified; the remaining 19 reported sightings were not supported by sworn statements or declarations from observers or physical or documentary evidence (*e.g.,* physical samples, photographs). *See, e.g., Sauder Decl.* ¶¶ 5-6 (Dkt. 86-9), *Boudreau Decl.* ¶13 (Dkt. 86-5), *Schmidt Decl.* ¶¶4-6 (Dkt. 86-10). Only 2 of the 23 reported sightings were from the past 10 years, despite various targeted survey efforts in the Region during this time. *Santasiere Decl. Exh. A* (except for sightings on 5/12/08 and 7/16/2010, all other Clearwater Region reported sightings were dated between 1999 and 2005) (Dkt. 65)*; see Sauder Decl.* ¶¶4-5, 8. The only verified and more recent of these two lynx sightings was a radiocollar mortality signal in July 2010 from an animal originating from the population transplanted to Colorado. *Sauder Decl.* ¶5.

State Officials' declarants explained why unverified observations do not form the foundation for evaluating lynx presence. For example, Dr. Sauder explained how he was able to discount a reported lynx observation in 2015 (not entered by the observer into the sighting database) as attributable to a house cat. *Sauder Decl.* at ¶6; *see also Boudreau Decl.* ¶13

(referencing likelihood of mistaken identity, particularly in summer months). The record before the Court did not support an inference that even transitory lynx are routinely present in the Clearwater Region.

In addition, although the Clearwater Region is adjacent to the Panhandle Region, it is well over 100 linear miles of rugged, mountainous terrain between the closest boundaries of federally designated critical habitat in Idaho's Boundary County and the Clearwater Region. *See, e.g., Lucid Decl. Ex. D* (Panhandle Region survey area) (Dkt. 86-6); 79 Fed. Reg. at 54,844 (2014, map of lynx designated critical habitat in Northern Rocky Mountains)*; see also Order* at 20-21 (citing FWS' critical habitat determination of the lack of occupation by lynx at the time of listing in 2000 and lack of current occupation on the Nez Perce and Clearwater National Forests in the Clearwater Region). Since ESA listing of the lynx DPS in 2000, there is a record of four lynx captures by Idaho-licensed trappers. None of them occurred in the Clearwater Region; the nearest lynx capture in the Panhandle Region was over 100 linear miles from the nearest boundary of the Clearwater Region. *See Lucid Decl. Ex. D.* (showing nearest capture location in the northeastern part of the Panhandle Region and subsequent remote camera detections of the radiocollared lynx after its release).

It is unreasonable to infer from this record that it is "likely" that a transitory lynx would be present in the Clearwater Region at a time and place where it is likely to be incidentally trapped, and trapped in a way that it is likely to sustain injury. When the CITES ITS authorization for incidental lynx take related to bobcat trapping is taken into account, Plaintiffs' alleged irreparable harm is even more unlikely.

The record contained various declarations of State Officials affirmatively supporting a finding that irreparable harm related to the Clearwater Region is unlikely and speculative. *E.g.,*

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 11

*Whitman Decl.* ¶¶ 25-37 (Dkt. 86-4); *Boudreau Decl.* ¶¶17, 21, *Sauder Decl.* ¶¶6-8. The Court should therefore deny Plaintiffs' motion pursuant to FRCP 56(c). *Las Vegas Sands, LLC.,* 632 F.3d at 532. Moreover, because Plaintiffs bear the burden of showing a likelihood of irreparable harm and have provided no evidence of such harm for the Clearwater Region, the Court should grant Defendants' Cross-Motion to block Plaintiffs' requested relief as to the Clearwater Region. *See Celotrex Corp.,* 477 U.S. at 324.

2. **The record did not support a finding of irreparable harm related to the Panhandle Region.**

Unverified sightings reported for the Panhandle are subject to the unreliability and lack of evidentiary support as discussed for the Clearwater Region, *supra.* In addition, several of the "sightings" on Ms. Raichle's map were duplicate observations or represented sightings of the same individual lynx, including multiple verified observations of the lynx captured in January 2014 (perhaps the subject of both January 2014 captures). *Lucid Decl.* ¶¶14, 26, *Ex. D* (includes multiple sightings of the same individuals as noted). Extensive forest carnivore surveys from 2009-2014 did not detect lynx in most of the Panhandle Region, which includes 9 Game Management Units covering a total of approximately 7,700 square miles. *See Lucid Decl., Ex. D; compare Raichle Decl. Ex. A* (Dkt. 55-1).

The Court also quoted FWS statements that apply to the entirety of 9,783 square miles of lynx critical habitat for the Northern Rocky Mountains, all but 45 square miles of which is in Montana. *Order* at 19-20. FWS' statements as to occupation of "the area" and "wide distribution across the unit" apply to the 9,783 square miles designated critical habitat area as whole, without specific application to the small portion in Idaho. *See 79 Fed. Reg.* at 54,825; 54,844. The record provided no specific application for these statements to the 45 square miles of designated critical habitat in Idaho, which comprises a portion of Game Management Unit 1 in the corner of

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 12

Boundary County; the record also provided no basis to apply these statements to the thousands of square miles in the Panhandle Region outside of designated critical habitat. *See id*.

Three of the four lynx captures by Idaho-licensed trappers in this case occurred in Boundary County. However, Plaintiffs made no showing to support a finding that irreparable harm is likely, either in the form of harm to individual lynx, or harm significant to the lynx distinct population segment as whole. There was no evidence the four lynx captures in Idaho resulted in trap-related injuries affecting the animal's survival ability; in fact radio-collar telemetry, physical examination, photographs and observation evidence support an affirmative finding the animals received no harm from the trap. *Drew Decl.* ¶¶9-13 (Dkt. 86-3)*; Lucid Decl.* ¶¶3-10, 14, *Ex. A-C; see also Waterbury Decl.* ¶¶3-5 (Dkt. 86-7). State Officials filed various declarations affirmatively supporting a finding that irreparable harm related to the Panhandle Region is unlikely and speculative. *See, e.g., Whitman Decl. ¶¶ 25-37; Boudreau Decl. ¶21*. When the CITES ITS authorization related to bobcat trapping is taken into account, Plaintiffs' alleged irreparable harm is even more unlikely, as only one of the three lynx captures in Boundary County involved a target animal other than bobcat.

The Court should therefore deny Plaintiffs' motion pursuant to FRCP 56(c). *Las Vegas Sands, LLC.,* 632 F.3d at 532. Moreover, because Plaintiffs bear the burden of showing a likelihood of irreparable harm and have provided no evidence of such harm for the Panhandle Region, the Court should grant Defendants' Cross-Motion to block Plaintiffs' requested relief as to the Panhandle Region. *See Celotrex Corp.,* 477 U.S. at 324.

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 13

## IV.  CONCLUSION

For the foregoing reasons, the Court should fully deny Plaintiffs' Motion for Summary Judgment and should grant State Officials' Cross-Motion for Summary Judgment, such that Plaintiffs are blocked from their requested relief in regards to all seven regions of Idaho.

Respectfully submitted this 8th day of March, 2017.

/s/ Samuel J. Eaton_____  
Samuel J. Eaton  
Legal Counsel  
Idaho Governor's Office of Species Conservation  
Attorney for Governor Otter

Lawrence G. Wasden  
Attorney General  
State of Idaho

 /s/ Kathleen E. Trever_____  
Kathleen Trever  
Deputy Attorney General  
Attorney for IDFG Director Moore and Idaho Fish and Game Commissioners

# CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on March 8, 2017, I filed the foregoing Brief on behalf of Governor Otter, Director Moore and Idaho Fish and Game Commissioners, electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Amy R. Atwood**
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971)-717-6401
Email: atwood@biologicaldiversity.org

**Peter M.K. Frost**
Western Environmental Law Center
1216 Lincoln St.
Eugene, OR 97401
(541) 359-3238
Fax: (541) 485-2457
Email: frost@westernlaw.org

**Melissa Anne Hailey**
Antonio Bates Bernard Professional Corporation
3200 Cherry Creek Drive South
Denver, CO 80209
303-733-3500
Email: mhailey@abblaw.com

**Andrea Lynn Santarsiere**
Address: PO Box 469
Victor, ID  83455
Tel: (303) 854-7748
Fax: (208) 787-5857
Email:  asantarsiere@biologicaldiversity.org
*Attorneys for Plaintiffs*

**Samuel J. Eaton**
Governor's Office of Species Conservation
Address: 304 N. 8th Street, Ste. 149
Boise, ID 83702
(208) 859-7836
Fax: (208) 334-2172
sam.eaton@osc.idaho.gov
*Attorney for Governor Otter*

**Paul A. Turcke**
Moore Smith Buxton & Turcke, Chartered
950 W. Bannock Street, Suite 520
Boise, ID 83702
(208)-331-1800
Fax: 208-331-1202
pat@msbtlaw.com

**Gary Russell Leistico**
Rinke Noonan
1015 W. St. Germain Street, Suite 300
P.O. Box 1497
St. Cloud, MN 56302-1497
(320) 251-6700
Fax (320) 656-3500
gleistico@rinkenoonan.com
*Attorneys for Intervenor-Defendants*

                                      /s/ Kathleen E. Trever
                                      Kathleen Trever

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO RECONSIDER -- 15