IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, WESTERN WATERSHEDS PROJECT, FRIENDS OF THE CLEARWATER, and WILDEARTH GUARDIANS,<br><br>Plaintiffs,<br><br>v.<br><br>C.L. "BUTCH" OTTER, Governor of Idaho, in his official capacity; VIRGIL MOORE, Director of the Idaho Department of Fish and Game, in his official capacity; BRAD CORKILL, FRED TREVEY, BOB BAROWSKY, MARK DOERR, RANDY BUDGE, KENNY ANDERSON, and WILL NAILLON, members of the Idaho Fish and Game Commission, in their official capacities,<br><br>Defendants. | Case No. 1:14-CV-258-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it a second motion to reconsider based on new evidence. The motion is fully briefed and at issue. For the reasons expressed below, the Court will grant the motion to reconsider, and reverse its rulings on the cross-motions for summary judgment.

# ANALYSIS

The plaintiffs – four environmental groups – sued officials of the State of Idaho, alleging that the State's trapping regulations fail to sufficiently protect the Canada Lynx, a species that is listed as threatened under the Endangered Species Act (ESA). Plaintiffs

**Memorandum Decision & Order – page 1**

point out that trappers, licensed by the State, have captured four lynx in traps meant for other species. They urge the Court to impose specific regulatory changes on trapping in lynx habitat that would reduce the chance that lynx would be caught in traps intended to lure other species.

Each side filed a motion for summary judgment. Plaintiffs sought to impose regulatory changes on trapping throughout the State, while the State argued that no changes were required. To resolve these motions, the Court reviewed the status of the lynx in each of the seven Regions defined by the Idaho Department of Fish and Game to determine if it was likely that lynx would be inadvertently trapped in those Regions.

In five of those Regions, the Court concluded that it was not likely that lynx would be inadvertently trapped in the future and denied plaintiffs' request for injunctive and declaratory relief. But in two of the Regions – the northern-most Regions – the Court did find it likely that lynx would be inadvertently trapped, and directed the parties to submit a proposed remedy to address this conclusion.

The State responded by filing a motion to reconsider supported by a new Declaration of a key witness, Bridget Fahey, the Division Chief for Conservation and Classification for the Fish and Wildlife Service (FWS). Fahey had filed a Declaration in the first round of summary judgment motions stating that an FWS document known by its acronym as the "CITES ITS" allowed licensed trappers targeting bobcats to take a certain number of lynx in their traps without violating the ESA. It was not clear, however, whether Fahey was speaking officially for the FWS. Thus, the Court did not accord to

her the deference that might otherwise be due to an agency official interpreting agency-issued materials.

That ambiguity is clarified in Fahey's new Declaration: She describes in detail the official authorization she received from the FWS to testify in this case. *See Fahey Declaration (Dkt. No. 105-2).* It is now clear that Fahey's testimony is the official position of the FWS.

Plaintiffs responded by complaining that they had not been able to take discovery regarding Fahey's opinions. The Court granted plaintiffs an opportunity to take discovery, and denied the State's motion to reconsider without prejudice to the rights of the State to refile the motion upon completion of that discovery.

The parties have now completed that discovery and the State refiled its motion for reconsideration. To resolve this motion, the Court will not repeat its extensive discussion contained in two prior decisions but will incorporate them by reference. *See Memorandum Decisions (Dkt. Nos. 103 & 116).*

## ANALYSIS

### Bridget Fahey Testimony

Bridget Fahey is the Division Chief for Conservation and Classification in the Headquarters Office of the Fish and Wildlife Service (FWS). In her new submission, she testifies that her interpretation of the CITES ITS was authorized by the Department of Interior and made "in her official capacity pursuant to 43 CFR § 2.280 *et seq.*" *See Fahey Declaration (Dkt. No. 120-2)* at ¶ 4. This establishes Fahey's authority to speak on behalf of the FWS. The agency interprets the CITES ITS to exempt from the ESA the

"take of Canada lynx that are incidentally taken during state-licensed trapping targeting bobcats in Idaho." *Id.* at ¶ 7. This exemption includes lynx that are captured and released unharmed. *See Fahey Deposition (Dkt. No. 126-3)* at pp. 78-79. While there are numeric limits on the number of lynx that can be killed or injured by the traps, there are no numeric limits on the number of lynx that can be captured by the traps if the lynx are released unharmed. *Id.* at p. 48.[1]

Fahey's interpretation is entitled to deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844 (1984). The Court therefore reconsiders its prior decision, and finds that Fahey's interpretation is entitled to deference as an official position of the FWS. In that prior decision, the Court also expressed concern over the lack of a numeric limit on lynx released unharmed. *See Memorandum Decision, supra,* at 14-15. The Court cited *Center for Biological Diversity v. BLM,* 698 F.3d 1101, 1126-27 (9th Cir. 2012) for its holding that an ITS would violate the ESA if it "contains no numerical cap on take and fails to explain why it does not." In that case, the ITS set no limits whatsoever. *Id.* at 1126. Here, the CITES ITS sets limits on killing and injuring lynx, and Fahey explained the official position of the FWS that no limits were set on lynx released unharmed because "there are not impacts to the lynx distinct population

---

[1] Plaintiffs argue that Fahey testified in her deposition that lynx released unharmed are not exempt under the CITES ITS. The Court disagrees. In the deposition excerpt cited by plaintiffs, Fahey merely testifies that the CITES ITS numeric limits only applied to killing and injuring lynx, not to releasing them unharmed. *Id.* at p. 48. She did not testify that releases of lynx unharmed were not exempted by the CITES ITS. Indeed, later in the deposition, when specifically asked by plaintiffs' counsel whether the CITES ITS covered lynx released unharmed, Fahey answered that they were covered by the CITES ITS – in other words, exempt. *See Fahey Deposition (Dkt. No. 126-3)* at pp. 78-79.

**Memorandum Decision & Order – page 4**

segment or a likelihood of jeopardizing the continued existence of the distinct population segment." *See Fahey Declaration (Dkt. No. 105)* at ¶ 9. This case is therefore distinguishable from *Center for Biological Diversity*. Having reconsidered its prior ruling under the new evidence presented by the State, the Court now holds that Fahey's interpretation is entitled to deference and is controlling in this case.

This new reading of the CITES ITS changes the analysis significantly. By exempting takes of lynx by licensed trappers targeting bobcats, the CITES ITS makes it far less likely that illegal takes will occur in the future. There are only four reported lynx trapping incidents in Idaho, and two of those are clearly exempted by the CITES ITS – these two incidents occurred on December 29, 2012, and January 15, 2014, both in Boundary County.

Of the other two lynx trapping incidents, one of them involved trapping that today would be exempted by the CITES ITS – it was illegal only because of the temporary lapse of that exemption, a circumstance not likely to reoccur.[2] That leaves only the lynx trapping incident on January 15, 2014 – where a trapper was targeting wolves, not bobcats – as a taking under § 9 of the ESA that was not exempted by the CITES ITS.

To prevail, plaintiffs must show that the changes in trapping regulations they seek are necessary to prevent ongoing or future violations of the ESA by state-licensed

---

[2] This incident involved the capture and release of a lynx on January 26, 2012, by a licensed trapper targeting bobcats. The taking would be exempt under the CITES ITS, but the State concedes that the CITES ITS had temporarily lapsed on that date and was not renewed until about three months later. *See State Brief (Dkt. No. 120-1)* at p. 5, n. 7.

**Memorandum Decision & Order – page 5**

trappers. The Eleventh Amendment bars a suit against the State to obtain relief for past violations of the ESA, *National Audubon Society, Inc. v. Davis,* 307 F.3d 835 (9th Cir. 2002), although past violations are some evidence of the likelihood of ongoing or future violations. *See Porter v. Jones,* 319 F.3d 483, 491 (9th Cir. 2003). In addition, to show the irreparable harm necessary to obtain injunctive relief, the plaintiffs "must make a showing that a violation of the ESA is at least likely in the future." *National Wildlife Federation v. Burlington Northern Railroad,* 23 F.3d 1508, 1512 at n.8 (9th Cir. 1994).

Is it likely that future ESA violations will occur? Three of the four reported lynx trapping captures were by trappers targeting bobcats, activities that are exempted from the ESA by the CITES ITS. The one past violation not exempted involved a trapper targeting wolves, and the plaintiffs point to the intense dislike of wolves in Idaho to argue that increased trapping targeting wolves will threaten lynx. But that speculation is not supported by anything in the record. Indeed, in the four years since that single incident there have not been any reported lynx trappings. *See Crea Declaration (Dkt. No. 126-1)* at ¶ 5. There is always the danger that lynx captures are going unreported. But injunctions and declaratory relief must be based on evidence not speculation.

To show irreparable harm, and to overcome Eleventh Amendment immunity, the plaintiffs must show that future ESA violations are likely in Idaho if the existing regulations remain in place. With the new evidence of the FWS's interpretation of the CITES ITS, the record is now far too thin to support a finding that plaintiffs have carried their burden. Accordingly, the Court finds that it must reconsider its prior decision and

reverse its decision on the cross-motions for summary judgment. The Court will issue a separate Judgment as required by Rule 58(a).

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to reconsider (docket no. 120) is GRANTED.

IT IS FUTHER ORDERED, that the defendants' motion for summary judgment (docket no. 83) is GRANTED.

IT IS FURTHER ORDERED, that the plaintiffs' motion for summary judgment (docket no. 55) is DENIED.

DATED: January 24, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge